IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRISTEN DVORAK, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 16-cv-08773<br>)<br>) Judge Charles R. Norgle |
| TARGET CORPORATION,<br>a Minnesota corporation, | )<br>)<br>) |
| Defendant. | )<br>) |

## **OPINION AND ORDER**

Plaintiff Kristen Dvorak ("Plaintiff") brings this premises liability action against Defendant Target Corporation ("Defendant" or "Target") for injuries sustained by Plaintiff when she fell at Defendant's place of business in Hillside, Illinois. Before the Court is Defendant's motion for summary judgment. For the following reasons, Defendant's motion is denied.

### I. BACKGROUND[1]

On August 11, 2014, Plaintiff was a customer at the Super Target located at 130 South Mannheim Road, Hillside, Illinois (the "Store"). Plaintiff, who was accompanied by her boyfriend, Christopher Ramos ("Mr. Ramos"), entered the Store around 2 p.m. At approximately 2:54 p.m., Plaintiff and Mr. Ramos walked down the main aisle separating the cosmetics and grocery sections. Shortly thereafter, Plaintiff and Mr. Ramos turned right to proceed down one of the grocery aisles (the "Grocery Aisle"). At this time, the Grocery Aisle was blocked by two shopping carts and there was an unknown individual standing next to one of the shopping carts who was dressed in a red shirt and khaki pants, which is consistent with the official uniform of Target

---

[1] The following undisputed facts were taken from Defendant's LR 56.1 Amended Statement of Material Facts ("Def.'s SOMF"); Plaintiff's Response to Defendant's LR 56.1 Statement of Material Facts ("Pl.'s Resp. to Def.'s SOMF"); and Plaintiff's Statement of Additional Facts ("Pl.'s SOAF").

employees. Mr. Ramos proceeded into the Grocery Aisle first and moved one of the shopping carts. At the same time, the second shopping cart was moved out of the Grocery Aisle and into the main aisle by the unknown individual wearing the Target employee uniform. Plaintiff then took several steps forward, slipped on a yellow-green liquid on the floor (the "Spill"), and fell forward to the ground. Plaintiff was injured when she fell.[2] Although Mr. Ramos did not see Plaintiff fall, he immediately came to her aid and documented the area by taking photos and videos. Plaintiff remained on the ground for approximately fifteen minutes after she fell, until she was taken away by paramedics on a stretcher.

Neither Plaintiff nor Mr. Ramos saw the Spill before Plaintiff fell. After she fell, however, Mr. Ramos observed what he believed to be Powerade or Gatorade (hereinafter, "Gatorade") on the floor of the Grocery Aisle. Moreover, Mr. Ramos testified at his deposition that after Plaintiff fell, he observed a broken Gatorade bottle in one of the two shopping carts that was blocking the Grocery Aisle immediately preceding Plaintiff's fall, and that the contents of the Gatorade bottle were dripping onto the ground. Mr. Ramos stated that the Spill covered an area on the floor of approximately three to six feet in length in the middle of the Grocery Aisle, in the area where Plaintiff fell. Mr. Ramos further stated that he did not see anyone place the broken Gatorade bottle in the shopping cart and that he had no way of determining how long the Spill existed before Plaintiff's fall.

As for Plaintiff, she testified at her deposition that she did not know the cause of the Spill. She also stated that she did not how long the Spill existed before she fell.

Defendant has submitted three photos and two videos that were taken by Mr. Ramos after Plaintiff's fall. One of the photos was taken by Mr. Ramos immediately after Plaintiff's fall and

---

[2] The exact nature and extent of Plaintiff's injuries are immaterial for purposes of the instant motion.

shows multiple puddles of yellow-green liquid on the floor of the Grocery Aisle. The other two photos and the two videos were taken by Mr. Ramos after a Target employee cleaned up the Spill, and therefore show only residue of the Spill. None of the pictures or videos show the broken and leaking Gatorade bottle that Mr. Ramos testified he saw after Plaintiff's fall. Further, neither party asserts that the pictures or videos are useful in determining how long the Spill existed before Plaintiff's fall, i.e., the photos and videos do not show any footprints or marks from the wheels of a shopping cart in the yellow-green liquid.

Multiple Target employees were working near the Grocery Aisle before, during, and after Plaintiff's fall, including Lydia Molina ("Ms. Molina"), Monisola Oyeniyi ("Ms. Oyeniyi"), and Zkeyana Harris ("Ms. Harris"). At the time of Plaintiff's fall, Ms. Molina was working in the main aisle, two aisles away from the Grocery Aisle, performing "reshop"[3]; Ms. Oyeniyi was working one aisle away from the Grocery Aisle in the grocery section; and Ms. Harris was performing "reshop" in the cosmetics section directly across the main aisle from the Grocery Aisle. Despite their proximity to Plaintiff when she fell, all three employees testified at their depositions that they did not witness Plaintiff's fall. They also testified that: they did not know the cause of the Spill; they were not aware of the Spill before Plaintiff's fall; and they did not know how long the Spill existed before Plaintiff's fall.

Shortly after Plaintiff's fall, Target employee Alan Sternisha ("Mr. Sternisha"), the Store's executive team member, investigated Plaintiff's fall and completed an investigation report (the "Report"). Def.'s SOMF, Ex. M. Mr. Sternisha stated in the Report that Plaintiff "slipped on a spill which was lime green" and that he had "found a half drank Gatorade in the next aisle that matched

---

[3] The term "reshop" refers to the employee activity of placing good merchandise that had been left at customer service or elsewhere in the Store back on the shelves.

the spill." Id. At his deposition, however, Mr. Sternisha stated that he had no way of determining whether the half-empty Gatorade bottle that he found was in fact the cause of the Spill.

Perhaps the most illuminating evidence in this case is the surveillance video (the "Video") that captured the events surrounding and including Plaintiff's fall.[4] The Video was recorded by a Store surveillance camera that primarily covers the cosmetics section adjacent to the grocery section where Plaintiff fell. However, the portion of the Grocery Aisle where Plaintiff fell is visible near the top frame of the Video. Given the valuable nature of such documentary evidence, the Court will provide a summary of the Video, including multiple still frames taken from the Video.[5]

The Video begins at 2 p.m. on August 11, 2014. At approximately 2:24 p.m., an unknown Target employee[6] begins performing "reshop" in the cosmetic section. At 2:25:54 p.m., an unknown Target employee pushes a shopping cart into the Grocery Aisle and leaves it in the area where Plaintiff would later fall. This shopping cart remained in the same area until Plaintiff's fall, approximately 30 minutes later.

At 2:31:09 p.m., Plaintiff walks down the Grocery Aisle, directly through the area where she would later slip and fall. Plaintiff testified at her deposition that she did not see any liquid on the floor at this time.

At 2:50:58 p.m., an unknown male Target employee walks through the Grocery Aisle directly over the area where Plaintiff would later slip and fall. He walks down Grocery Aisle

---

[4] The Video has been authenticated through the testimony of numerous deponents, including the testimony of Maria Recendez, who was a "Protection Specialist" at Target at the time of Plaintiff's fall and was responsible for retrieving the Video of Plaintiff's fall from Target's surveillance system. See Federal Rule of Evidence 901.
[5] The Court has circled portions of the still frames to highlight notable events. Each still frame is marked with its corresponding time stamp from the Video.
[6] The video depicts numerous unknown individuals who are wearing a red shirt and khaki pants, the official Target employee uniform. See Def.'s SOMF, Ex. L, Deposition of Alan Sternisha, 132:15-133:1. Whether these unknown individuals are in fact Target employees must be left for a jury, for the sake of simplicity, the Court will refer to all such unknown individuals as an "unknown Target employee."

4

without difficulty. The unknown male Target Employee is followed by Ms. Molina.[7] However, Ms. Molina stops short of entering the Grocery Aisle and instead proceeds down the main aisle.

At 2:51:17 p.m. an unknown Target employee pushes a shopping cart through the Grocery Aisle directly over the area where Plaintiff would later slip and fall and then turns left into the main aisle. As shown in Frame 2 below, at 2:51:20 p.m. an object appears on the floor of the main aisle immediately after the unknown Target employee pushes the cart past the area. Frame 1 below shows that there was no object on the floor at 2:51:19 p.m.



2:51:19 p.m. (Frame 1)                    2:51:20 p.m. (Frame 2)

As shown in Frame 3 below, at 2:51:21 p.m. the unknown Target employee pushes the cart down the main aisle immediately after the object appears on the ground. At 2:51:57 p.m., thirty-six seconds after the object appears on the ground in the main aisle, an unknown Target employee walks over to the object, picks it up, and carries the object away while holding something white. At this time, Ms. Harris can be seen in the cosmetics aisle on the left side of Frame 3 performing "reshop."[8] Over the next minute and thirty-seconds, the same unknown Target employee who

---
[7] Ms. Molina identified herself in the Video at her deposition.
[8] Ms. Harris identified herself in the Video at her deposition.

picked up the object walks back-and-forth six times to the location where the object appeared on the floor.



2:51:21 p.m. (Frame 3)   2:51:57 p.m. (Frame 4)

2:51:59 p.m. (Frame 5)   2:52:02 p.m. (Frame 6)

At approximately 2:54 p.m. an unknown Target employee moves a shopping cart to the right side of the entrance of Grocery Aisle in the area where Plaintiff would later fall, so that the entrance to the Grocery Aisle is effectively blocked off by two shopping carts. As shown in Frame 7 below, at 2:54:12 p.m., an unknown Target employee is standing in front of the same shopping cart that was recently moved to the right side of the entrance of the Grocery Aisle.

As shown in Frames 8-10 below, at 2:54:20 p.m., Plaintiff enters the Grocery Aisle as the same unknown Target employee who was standing in front of the shopping cart pulls the shopping cart into the main aisle. Plaintiff then takes several steps forward, slips, and falls forward to the ground.



2:54:12 p.m. (Frame 7)  2:54:20 p.m. (Frame 8)
2:54:22 p.m. (Frame 9)  2:54:25 p.m. (Frame 10)

At approximately 3:05 p.m., paramedics arrive, and Plaintiff is wheeled away on a stretcher at 3:08:40 p.m. One of the paramedics, Kathryne Maureen ("Ms. Maureen") testified at her deposition that "it smelled like [Plaintiff] fell in pickle juice." Pl.'s SOAF ¶ 40, Ex. 5, Deposition of Kathryne Maureen, 11:8-9.

## II. DISCUSSION

### A. Standard of Review

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013) (internal quotation marks and citation omitted). "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The Court must view "the record in the light most favorable to the nonmovant and [avoid] the temptation to decide which party's version of the facts is more likely true." Id. Finally, "to survive summary judgment, the nonmoving party must present evidence sufficient to establish a triable issue of fact on all essential elements of its case." Lewis v. CITGO Petroleum Corp., 561 F.3d 698, 702 (7th Cir. 2009).

### B. Illinois Premises Liability Law

Illinois tort law governs this diversity case. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); see also Anicich v. Home Depot U.S.A., Inc., 852 F.3d 643, 648 (7th Cir. 2017), as amended (Apr. 13, 2017). To recover on her premises liability claim—colloquially known as a "slip and fall" claim—Plaintiff must establish the existence of a duty owed by Defendant, a breach of that duty, and an injury proximately resulting from that breach. Newsom-Bogan v. Wendy's Old Fashioned Hamburgers of New York, Inc., 2011 IL App (1st) 092860, ¶ 14.

Under Illinois law, Defendant, as a property owner, owes invitees like Plaintiff "a duty to maintain the premises in a reasonably safe condition." Parker v. Four Seasons Hotels, Ltd., 845 F.3d 807, 811 (7th Cir. 2017); see also Marshall v. Burger King Corp., 222 Ill. 2d 422, 437, 856 N.E.2d 1048, 1057–58 (2006). "Liability can be imposed when a business's invitee is injured by slipping on a foreign substance on its premises if the invitee establishes that (1) the substance was placed there by the negligence of the business; (2) the business had actual notice of the substance; or (3) the substance was there a sufficient length of time so that, in the exercise of ordinary care, its presence should have been discovered, i.e., the business had constructive notice of the substance." Zuppardi v. Wal-Mart Stores, Inc., 770 F.3d 644, 649 (7th Cir. 2014) (citing Newsom-Bogan, 2011 IL App (1st) 092860, ¶ 15).

Here, Defendant argues that Plaintiff has failed to present a genuine issue of material fact regarding whether: (1) Defendant caused the Spill on which Plaintiff slipped; (2) Defendant had actual notice of the presence of the Spill; or (3) Defendant had constructive notice of the Spill. Defendant further argues that it owed no duty to Plaintiff because the "reshop" activity in the Grocery Aisle was an open and obvious condition. The Court will address each argument in turn.

**B. There are Genuine Issues of Material Fact Regarding Whether Defendant Caused the Spill and Had Actual Notice of the Spill**

Defendant first argues that the record is void of any evidence suggesting that a Target employee caused the Spill or had actual notice of the Spill. For the following reason, the Court disagrees.

Under Illinois law, "[t]o prove that the defendant business, as opposed to a third person, created the dangerous condition, Illinois courts have required the plaintiff to (1) show that the foreign substance was related to the defendant's business and (2) 'offer[ ] some further evidence, direct or circumstantial, however slight, such as the location of the substance or the business

9

practices of the defendant, from which it could be inferred that it was more likely that defendant or his servants, rather than a customer, dropped the substance on the premises.'" Zuppardi, 770 F.3d at 649–50 (quoting Donoho v. O'Connell's, Inc., 13 Ill. 2d 113, 122, 148 N.E.2d 434, 439 (1958)).

As an initial matter, the Court notes that Defendant's motion repeatedly refers to the Spill as "Gatorade." While the record does contain evidence suggesting that the Spill was Gatorade—most notably, Mr. Ramos testified that he saw Gatorade leaking onto the floor of the Grocery Aisle after Plaintiff's fall—the paramedic who assisted Plaintiff, Ms. Maureen, testified that the Spill smelled like pickle juice. Notwithstanding Defendant's failure to address this point, the Court finds that the inconsistent testimony of Mr. Ramos and Ms. Maureen creates a genuine issue of material fact as to whether the liquid on which Plaintiff slipped was Gatorade or pickle juice. This is of no consequence to the analysis at hand, however, because there is no question that both Gatorade and pickles were related to Defendant's business of selling groceries. Thus, the only remaining issue is whether the record contains any further evidence, either direct or circumstantial, that it was more likely that Defendant, rather than a customer, caused the spill. See Zuppardi, 770 F.3d at 649–50.

Here, Mr. Ramos testified that he saw a broken Gatorade bottle in one of the two carts in the Grocery Aisle immediately after Plaintiff's fall. There is no dispute that several of Defendant's employees were performing "reshop" in the area around the time of Plaintiff's fall, which involved organizing items on the Store's shelves. Moreover, the Video depicts individuals who are likely Defendant's employees—based on their uniforms—using shopping carts in and around the Grocery Aisle before Plaintiff's fall. One reasonable inference to draw from these facts is that a Target employee placed a broken Gatorade into a shopping cart while working in the area, which caused the Spill in the Grocery Aisle.

10

In support of its position, Defendant points to the lack of direct evidence that one of its employees placed a broken Gatorade bottle into a shopping cart. Defendant cites the deposition testimony of Plaintiff, Mr. Ramos, and its own employees, who all stated that they did not know the cause of the Spill. Defendant also points to its policies at the time of Plaintiff's fall, which prohibited employees from placing broken bottles in shopping and carts, and instead required the employee to take broken bottles directly to "guest services" so that the item would be permanently removed from the shelves. Defendant further asserts that there is no dispute that Gatorade was not sold in the area where Plaintiff fell.

Defendant's argument fails for several reasons. First, Plaintiff is not required to produce any direct evidence that Defendant caused the Spill; rather, Plaintiff need only produce circumstantial evidence from which it could be inferred that it was more likely that Defendant or its employee, rather than a customer, caused the spill. Zuppardi, 770 F.3d at 649–50. As discussed above, there is adequate circumstantial evidence on this point to create a triable issue of fact. Moreover, while Defendant has produced some circumstantial evidence suggesting that the Spill was *not* caused by one of its employees, the entire body of circumstantial evidence would allow a reasonable jury to reach the opposite conclusion.

Additionally, there are genuine issues of material fact regarding whether a Target employee caused the Spill by knocking or dropping an object onto the floor of the main aisle at 2:51:20 p.m., as depicted in the Video, and whether a Target employee had actual notice of the Spill.

In the Video, an object appeared on the floor of the main aisle at 2:51:20 p.m., near the area where Plaintiff would fall only three minutes later. The object appeared on the floor immediately after an unknown Target employee pushed a shopping cart through the Grocery Aisle and turned left into the main aisle. Shortly thereafter, another unknown Target employee walked

over to the object, picked it up, and carried the object away while holding a white substance resembling paper towel. Over the next minute and thirty seconds, the same unknown Target employee returned to the area where the object fell six different times. A reasonable jury could draw several inferences from this series of events.

First, a reasonable jury could find that the Spill occurred when the object appeared on the ground of the main aisle. As noted above, the record contains evidence that the Spill happened shortly before Plaintiff fell, e.g. there were no footprints or wheel tracks in the Spill, which is consistent with the appearance of the object in the main aisle three minutes before Plaintiff fell. Moreover, the sequence of events depicted in the Video suggests that a Target employee knocked over or dropped the object while pushing a shopping cart down the Grocery Aisle. Thus, a reasonable jury could conclude that a Target employee caused the Spill by knocking over or dropping a bottle of liquid near the Grocery aisle.

Second, a reasonable jury could find that the unknown Target employee who picked up the object had actual notice of the Spill but failed to clean the Grocery Aisle. As depicted in the Video, the unknown Target employee returned to the area where the object fell multiple times in a short period of time, consistent with the actions of someone who is cleaning up a spill. The unknown Target employee also appears to be carrying paper towel, but the Video does not depict the individual cleaning the area of the Grocery Aisle where Plaintiff fell.

The Court notes that neither Plaintiff nor Defendant directed the Court's attention to the appearance of the object on the floor in the main aisle at 2:51:20 p.m., or the subsequent actions of the unknown Target employee who picked up the object. Rather, the Court noticed these events during its own review of the Video. It is unclear whether the parties simply did not notice these events in their own review of the Video, or whether they chose to not address them for other

reasons. Ultimately, however, the parties' silence on this point is of no consequence, as the Court must consider the record in the light most favorable to Plaintiff on summary judgment, which includes the Video in its entirety. See Payne, 337 F.3d at 770. Moreover, while Rule 56 provides that the Court "need only consider…cited materials" on a motion for summary judgement, it also provides that the Court "*may* consider other materials in the record." Fed. R. Civ. P. 56(c)(3) (emphasis added). In other words, the Court is not obligated to close its eyes to evidence in the record simply because the parties failed to specifically address the evidence.

For the reasons stated above, there are multiple genuine issues of material fact regarding whether a Target employee caused the Spill and had actual notice of the Spill. Accordingly, Defendant's motion is denied to the extent it seeks summary judgment on these issues. Further, given the Court's holding here, there is no need to address the issue of constructive notice. See Lane v. Hardee's Food Sys., Inc., 184 F.3d 705, 707 (7th Cir. 1999) ("If the plaintiff is injured by slipping on a foreign substance placed or left on the premises by the proprietor or its agent, the defendant business can be liable whether it knows of the dangerous condition or not." (citing Reed v. Wal-Mart Stores, Inc., 298 Ill. App. 3d 712, 716, 700 N.E.2d 212, 214 (1998)).

**D. The "Reshop" Activity Was Not an Open and Obvious Condition**

Next, Defendant argues that it owed no duty to Plaintiff because the "reshop" activity that was being performed by its employees near the Grocery Aisle at the time of Plaintiff's fall was an open and obvious condition. For the following reasons, the Court disagrees.

Illinois has adopted the open and obvious rule as an exception to the general duty of care owed by a landowner. Ward v. K Mart Corporation, 136 Ill. 2d 132, 149 (Ill. 1990). Under the open and obvious rule "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless

13

the possessor should anticipate the harm despite such knowledge or obviousness." Id. (quoting Restatement (Second) of Torts, § 343A). "'Obvious' means that 'both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment.'" Bruns v. City of Centralia, 21 N.E.3d 684, 690 (Ill. 2014) (quoting Restatement (Second) of Torts § 343A cmt. b at 219 (1965)). "In cases involving obvious and common conditions, such as fire, height, and bodies of water, the law generally assumes that persons who encounter these conditions will take care to avoid any danger inherent in such condition." Bucheleres v. Chicago Park Dist., 171 Ill. 2d 435, 448 (1996). "The open and obvious nature of the condition itself gives caution and therefore the risk of harm is considered slight; people are expected to appreciate and avoid obvious risks." Id.

"The existence of an open and obvious danger is not an automatic or *per se* bar to the finding of a legal duty on the part of a defendant." Bruns, 21 N.E.3d at 690 (citing Jackson v. TLC Associates, Inc., 185 Ill. 2d 418, 425 (Ill. 1998). Rather, the open and obvious rule affects the first two factors of the duty analysis: foreseeability of harm and likelihood of injury. Id. "Where the condition is open and obvious, the foreseeability of harm and the likelihood of injury will be slight, thus weighing against the imposition of a duty." Id. (citing Bucheleres, 171 Ill. 2d at 456-57).

In support of its argument that the "reshop" activity was an open and obvious condition, Defendant cites to the Court's decision in Ochoa v. Menard, Inc., No. 16-CV-6922, 2017 WL 4861674 (N.D. Ill. Oct. 27, 2017). In Ochoa, the plaintiff was shopping in a Menards store when he encountered an aisle that was effectively blocked off by two shopping carts filled with merchandise. In the same aisle, an employee was restocking large pieces of particle board from a flatbed cart. Id. at *1. Despite the aisle being blocked by the shopping carts, the plaintiff slid past the shopping carts and proceeded into the aisle, where he slipped on a plastic corner protector that

had fallen off the particle boards that the employee was restocking. Id. at *3. On summary judgment the Court held that employee's restocking activity was an open and obvious condition. The Court explained that "[t]he reasonable person, when confronted with such a scenario, understands that there are certain inherent risks when entering this type of work in progress—including that there could be stray objects, such as the corner protectors, littering the floor—as this is a common sight during restocking activity at retail stores. Further, this inherent risk is especially evident when the aisle is blocked off by numerous obstacles related to the stocking activity, signaling to the reasonable person that he should avoid the area." Id. at *4.

Here, the facts of this case are immediately distinguishable from Ochoa. In this case, Defendant's employees were performing "reshop" in the general area of the Grocery Aisle where Plaintiff fell, rather than in the aisle itself. Further, Defendant's employees were not restocking large items, like the particle board in Ochoa, so that a reasonable person should have appreciated the inherent risk associated with entering such a work in progress. Moreover, unlike in Ochoa, the two shopping carts blocking the Grocery Aisle had no obvious connection to the employee's "reshop" activity, and Plaintiff did not slide in between the two shopping carts blocking the Grocery Aisle. Instead, an unknown Target employee moved one of the shopping carts out of the Grocery Aisle, allowing Plaintiff to proceed. Thus, this case is readily distinguishable from Ochoa.

Finally, there are no other facts in the record indicating that Defendant's duty should be abrogated by the open and obvious rule. Although the yellow-green color of the Spill made it visible against the white tiles on the floor of the Grocery Aisle, the Spill was not so clearly visible that a reasonable person in Plaintiff's position, exercising ordinary perception, intelligence, and judgment, should have noticed the Spill and avoided the area. Moreover, Plaintiff's view of the

floor was obstructed by a shopping cart immediately before her fall, which further decreased the visibility of the Spill.

Accordingly, Defendant's motion is denied to the extent it argues that the "reshop" activity or the Spill was open and obvious.

### III. CONCLUSION

For the reasons stated above, there are genuine issues of material fact regarding whether Defendant caused the Spill and had actual notice of the Spill. Additionally, the record does not support that Plaintiff's injury was caused by an open an obvious condition. Accordingly, Defendant's motion for summary judgment is denied.

IT IS SO ORDERED.

ENTER:

*[signature]*
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: May 21, 2019